Sullivan,
Feb. 1, 1949. } No. 3805.

WINTHROP BLANCHARD *v.* CLAREMONT EAGLE, INC. *& a.*

*Buckley, Zopf & Hamlin (Mr. Robert B. Buckley* orally), for the plaintiff.

*Leahy & Denault (Mr. Albert D. Leahy* orally), for the defendants.

KENISON, J. For the most part any thoughtful consideration of the present state of the law of libel either begins or ends with a combined apology and lament. Without unduly expanding this conclusion with many supporting citations (see Swindler, A Bibliography of Law on Journalism (1947) 56-76) the following quotation is typical and representative. "It must be confessed at the beginning that there is a great deal of the law of defamation which makes no sense. It contains anomalies and absurdities for which no legal writer ever has had a kind word, and it is a curious compound of a strict liability imposed on innocent defendants, as rigid and extreme as anything found in the law, with a blind and almost perverse refusal to compensate the plaintiff for a real and very serious harm. The explanation is in part one of historical accident and survival, in part one of the conflict of opposing ideas of policy in which our traditional notions of freedom of expression have collided violently with sympathy for the victim traduced and indignation at the maligning tongue. . . . No very comprehensive attempt ever has been made to overhaul and untangle this entire field of law, and, unhappily, there seems to be none in prospect." Prosser, Torts (1941) *s.* 91. A recent exception to the last sentence is Chafee, Possible New Remedies for Errors in the Press. 60 Harv. L. Rev. 1.

A commendable approach to the problem of upholding the freedom of the press to report and comment on matters of community interest on the one hand and protecting the individual's right of reputation in

his trade, business or profession on the other hand has been made in the Restatement of Torts. "Criticism of so much of another's activities as are matters of public concern is privileged if the criticism, although defamatory is upon a true or privileged statement of fact, or upon facts otherwise known or available to the recipient as a member of the public, and represents the actual opinion of the critic and is not made solely for the purpose of causing harm to the other." S. 606 (1). *Comment* a refers to certain traditional matters of public concern including also medical associations (*s.* 608, *comment* e) and then continues: "This is not intended to constitute a complete category of matters of such public concern that comments thereon are thus protected. There may be other subjects of comment and criticism which are accorded similar protection." In *comment* c the point is made that the criticism may be privileged although not reasonably warranted by the facts because of the public interest in free interchange of opinion.

A case involving the present factual situation has not been found. It is to be noted, however, that the statements in this case are substantially different from those held libelous respecting physicians in the annotation in 124 A. L. R. 553.

The publications, taken as a whole, are susceptible of more than one construction. Thus the plaintiff argues that they charged professional misconduct and reflected on his professional character. The defendants take a contrary view and say that the publications in their entirety were an attack on a law which was detrimental to the health and welfare of the community. While it is a question of law whether certain words are capable of a defamatory construction, "whether that was the sense in which they were used is a question of fact." *Richardson* v. *Thorpe*, 73 N. H. 532, 534. Since this is not a case where comment respecting a professional man is capable only of a libelous meaning (*Giles* v. *Clarke Co.*, 69 N. H. 92), the court properly allowed the jury to determine in what sense they were used by the defendants. If used in the sense contended for by the plaintiff, there was no privileged criticism or privileged occasion. If used in the sense contended for by the defendants, it was for the jury to determine whether the criticism represented an honest opinion expressed for a proper purpose and whether the defendants did or did not abuse a conditionally privileged occasion. Restatement, Torts, ss. 618, 619.

It was subsequently discovered that the state law did not prohibit treatment by non-licensed doctors in "cases of emergency." R. L., *c.* 250, *s.* 18. But it is well settled in this state that a statement may

be conditionally privileged even though it is not true if made without malice. *Moore* v. *Butler*, 48 N. H. 161, 165; *Lafferty* v. *Houlihan*, 81 N. H. 67; *Slocinski* v. *Radwan*, 83 N. H. 501. If the defendants did not know of the law or were mistaken about it, there is evidence that the newspaper checked with plaintiff and received evidence from him which led it to believe that this non-existent law played some part in the incident. R. L., *c.* 391, *s.* 6. It was to be considered by the jury along with plaintiff's statement: "I can't make an examination, my instruments for examining are in my office in Vermont, and I have no license to establish an office in New Hampshire."

The inability of members of a community to receive emergency care and first aid is not entirely a private matter of the person injured. R. L., *c.* 51, *s.* 4, *pars.* VI, VII, VIII and XXIII. While that may not create a legal duty for newspaper comment, there may be a social or moral duty to inform the public if done with good motives and for a proper purpose. Any contrary rule "would be foredoomed to practical failure as an attempt to decree that men and women shall not act like human beings." *Slocinski* v. *Radwan, supra,* 505. History and experience give us examples of both the "silly" and the "dangerous" caused in part by legislatures and courts upon which the spotlight of criticism and comment may have a healthy effect. Freedom of discussion is not to be confined within narrow limits although its outer boundaries are circumscribed by the law of libel. *Mencher* v. *Chesley*, (N. Y.), 75 N. E. (2d) 257.

Plaintiff's exceptions are overruled and in view of the result reached it is unnecessary to consider defendants' exceptions.

*Judgment on the verdict.*

All concurred.