Rockingham,
No. 5343.

WESLEY POWELL

*v.*

MONITOR PUBLISHING COMPANY, INC.

Argued December 8, 1965.
Decided March 1, 1966.

*Flynn, Powell & McGuirk ( Mr. Russell H. McGuirk* orally ), for the plaintiff.

*Orr & Reno ( Mr. Robert H. Reno* orally ), for the defendant.

DUNCAN, J. The editorial which gives rise to this action was entitled " Why the Wheeling and Dealing ? " and was as follows:

" When three State Senators admit that they have agreed to vote alike on the sweepstakes bill there is a reasonable suspicion that they have made some kind of a deal, and that the deal may involve others than the trio.

" Senators Carter, Howard and Whalen, freshman Republicans

who had been counted as opposed to the sweepstakes bill until the past week, then wavered. Carter, in committee, switched. About the same time other members of the trio let it be known they would all vote alike.

"Back in February Senator Howard said he didn't think the bill would pass the Senate, but if he thought it would he would seek amendments to it which would permit ticket sales by town clerks and a provision that the proceeds go into the state's general fund. Neither of these amendments is in the bill as reported by the joint Senate committees, but as of this writing ( Monday ) Carter, Howard and Whalen are reported as in favor of the bill.

"Had the trio singly and without an agreement changed their votes the question of a deal might not arise. But why an agreement, and their reported shift of position?

"The trio in the past have been Powell partisans. Was the former Governor involved in an attempt to embarrass the party which threw him out of office rather unceremoniously in last year's primary? Powell in the past has publicly personally opposed sweepstakes. But Powell has also been vindictive in the past.

"Moreover, the word is out that Powell will seek the Republican nomination again in 1964.

"The Republican party as such has not taken a position on the sweepstakes, but in the House Republicans voted against the bill by two to one and very nearly defeated it. The majority of Republicans in the Senate are still expected to oppose the bill, despite the reported defection of the freshman trio. The Republican Senators who will join the Democrats in favor of the sweepstakes bill are mainly Powell partisans.

"We don't like the sweepstakes bill. We don't like the wheeling and dealing which it has provoked. We don't like the failure of the Republicans in the legislature as a party, or the failure of the Governor, as chief executive representing all the people, to take a position in opposition to the sweepstakes bill in the interests of the public welfare."

In support of its motion to dismiss, the defendant contends that the editorial is not capable of bearing a defamatory meaning, and that the words complained of in the two counts of the declaration are not capable of conveying the defamatory meaning ascribed to them by the innuendoes stated therein. In our opinion the editorial is capable of bearing a defamatory meaning, and

we find it unnecessary at this time to determine whether every innuendo assigned to the words used is warranted, because we are satisfied that some at least are sufficient to state a cause of action.

In both counts the plaintiff has alleged that he is known throughout the United States, State of New Hampshire and other places in the United States, has held the office of Governor of the State of New Hampshire, has served as Chairman of the United States Governors' Conference, and in other administrative capacities in the United States, and prior to April 16, 1963, had resumed the general practice of law in Portsmouth and Hampton Falls.

By the first count of the writ, the plaintiff has alleged that the editorial by innuendo accused him of being involved in an improper deal; of violating the law by using improper influence upon State Senators, thereby causing them to violate their oaths of office; of being a wicked and bad person; of using bad and illegal means for his own personal gain; of being intemperate to such a degree that his hatred and desire for revenge so controlled him that his own petty motives would prevail in all instances over the rights of his fellow man; of being insincere; of stating publicly one position and privately working to accomplish the opposite.

In the second count, the plaintiff has alleged, in addition to the matters contained in the first count, that the editorial, by innuendo, accuses him of participating, with three State Senators, in an improper and illegal deal in the State Government; of influencing members of the State Government to violate their oaths of office and other laws of the state and that he was doing this not out of personal conviction but to embarrass the Republican Party; of being so ill-tempered, intemperate and controlled by passion that he would ruthlessly and without reason, for his own personal gain, use illegal means to violate the law or have others violate the law to accomplish his purpose; and of conspiring with members of the Legislature to obstruct the ordinary functioning of government, illegally, for personal gain.

The defendant concedes that the effect of the first paragraph of the editorial is to suggest that the plaintiff was involved in "some kind of a deal" with the three State Senators in question. It argues however, that the word "deal" as used by the writing bears no defamatory connotation. It quotes as one meaning of the word, the definition "a clandestine arrangement, as in

business or political bargains, to attain mutual advantage by a combination of those interested. " See Webster's New Int. Dict. ( 2d *ed.* ) 675. As the plaintiff suggests, the word "clandestine" is defined by the same authority as meaning "conducted with secrecy by design, usually for an evil purpose . . . illicitly covert; underhand. " *Id.*, 494.

Thus it appears that in the light of the facts related the editorial was capable of being understood as charging the plaintiff, on the basis of circumstantial evidence, with engaging in corrupt conduct, injurious to the public welfare and contrary to his previously expressed convictions, for the purpose of retaliation against a political party which had repudiated him at the polls, and of improvement of his own position as a future candidate. If so interpreted, the writing could be found to be defamatory whether or not all of the innuendoes suggested by the declaration were capable of being drawn from the editorial. *Catalfo* v. *Shenton*, 102 N. H. 47; *Chagnon* v. *Union Leader Co.*, 103 N. H. 426, 434.

It follows that the motion to dismiss was properly denied unless the declaration was defective for failure to properly allege malice on the part of the defendant.

The amended motion to dismiss alleged that the action is barred by the Constitutions of the United States and of this state because to permit the recovery sought would abridge the defendant's right of freedom of speech and of the press, upon public questions. More specifically, the defendant argues that "[h]aving failed to allege actual malice, the plaintiff, a public figure, cannot, as a matter of federal constitutional law, maintain a libel action based on an editorial concerning a public issue pending before the Legislature."

In support of this position the defendant relies upon *New York Times Co.* v. *Sullivan*, 376 U. S. 254, decided March 9, 1964, which prompted the filing of the amended motion to dismiss.

Both counts of the plaintiff's declaration allege that the defendant, "maliciously intending . . . to injure said plaintiff [in] name . . . and reputation . . . did falsely and maliciously . . . publish . . . a certain false . . . malicious and defamatory libel. " These allegations, the defendant maintains are insufficient under the holding of the *Times* case *supra* that in order to recover for libel a public official must prove that the defamatory falsehood relating to his official conduct was made with "actual malice — that is, with knowledge that it was false or with reckless disregard of

whether it was false or not. " *New York Times Co.* v. *Sullivan*, *supra*, 280.

As elaborated upon in *Garrison* v. *Louisiana*, 379 U. S. 64, the *Times* rule requires a distinction to be recognized between malice in the sense of hatred, ill will, or wanton desire to injure, as opposed to malice in the sense of an intent to harm by known falsehood, or by reckless disregard of truth or falsity. *Garrison* v. *Louisiana, supra, pp.* 74, 78. See also, *Henry* v. *Collins*, 380 U. S. 356.

The principal difficulty facing the defendant in this case is that the plaintiff in the *Times* case was a public official, while the plaintiff in this case was not. Recent cases have suggested that the *Times* rule may be extended to candidates for office ( *Clark* v. *Allen*, 415 Pa. 484 ), or public figures ( *Walker* v. *Courier-Journal and Louisville Times Co.*, 246 F. Supp. 231 ( D.W.D. Ky. 1965 ); *Pauling* v. *News Syndicate Co.*, 335 F. 2d 659, 671 ( 2d Cir. 1964 ). *Cf. Fignole* v. *Curtis Publishing Co.*, 247 F. Supp. 595 ( D.S.D. N. Y. 1965 )).

The most recent opinion of the United States Supreme Court dealing with the issue makes it clear that the rule extends " at the very least to . . . government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs. " *Rosenblatt* v. *Baer*, 86 S. Ct. 669, 676, decided February 21, 1966. However the opinion suggests no specific criteria for determining the ultimate scope of the rule beyond its application to a " position in government [ of ] importance " ( *Id.* ) although recognizing in footnote 12 the possibility of a contention that a basis would exist where "the interests in reputation are relatively insubstantial, because the subject of discussion has thrust himself into the vortex of the discussion of a question of pressing public concern. "

There is no reason to suppose that the case before us falls within the last-described category. We therefore consider that the rule of *New York Times Co.* v. *Sullivan, supra,* does not embrace this case.

We hold that the plaintiff's writ sufficiently alleges malice on the part of the defendant, and that the motion to dismiss was properly denied.

*Exception overruled.*

All concurred.