Hillsborough,
No. 5780.

ROSELLE A. ROY, *Ex'x*

*v.*

MONITOR-PATRIOT CO. *& a.*

Argued February 4, 1969.
Decided June 30, 1969.

*Bois, Laflamme & Kalinski* and *McLane, Carleton, Graf, Greene & Brown* (*Mr. Stanley M. Brown* orally), for the plaintiff.

*Devine, Millimet, McDonough, Stahl & Branch* and *Robert A. Backus* (*Mr. Joseph A. Millimet* orally), for the defendants.

GRIMES, J. This action for libel was tried before *Morris*, J. and jury resulting in verdicts against each defendant in the amount of $10,000. Alphonse Roy died after the trial and his executrix has appeared.

The action arose out of the publication on September 10, 1960, in the Concord Daily Monitor and New Hampshire Patriot of Drew Pearson's syndicated column "D. C. Merry-Go-Round" which referred to Alphonse Roy who was running in the Democratic primary for nomination as that party's candidate for the United States Senate. The column was distributed by the defendant North American Newspaper Alliance, Inc. (NANA) under

a contract with Pearson. The publication complained of read in part as follows: "One of [Democratic candidate for U. S. Senate] Hill's primary opponents, Frank L. Sullivan, was released from the Grasmere County Work Farm just in time to file for the Senate. With a police record of no fewer than 19 convictions for drunkenness since 1945, he was serving his latest 90-day sentence.

*"Curious Call*

"To make sure he would get out in time to run for the Senate, a former small-time bootlegger and later U. S. Marshall, Alphonse Roy, telephoned the Grasmere warden about Sullivan.

"Ralph LaVallee, in charge of Grasmere, admitted to this column that he had received a telephone inquiry from Roy as to whether Sullivan would be released in time to file. But the warden denied another report that Roy had announced he was calling 'on behalf of my friend Styles [Bridges, Republican U. S. Senator from New Hampshire].'

" 'I don't want to get implicated in anything like that,' said LaVallee. 'Roy didn't mention Senator Bridges.'

"Sullivan happily got out of the workhouse in time to run for the most distinguished legislative body in the world. And who should turn up on the ballot but the same Alphonse Roy who was so eager to get him out of the clink.

"Because of the peculiar population division of New Hampshire, The Irish Catholics may be inclined to vote for a Frank Sullivan while The French Canadians could be attracted by a name like Alphonse Roy. The effect would be to cut down on Herb Hill's chances."

Plaintiff's declaration made three claims which were treated at the trial as separate counts complaining that: (1) The bootlegger statement imputed criminal conduct; (2) The reference to the Sullivan candidacy imputed improper and unethical conduct by seeking his release from jail and inducing him to run as a straw candidate; and (3) He was charged with being engaged in unethically cooperating with a candidate in the opposite political party by inducing Sullivan to run as a straw candidate.

A verdict was directed in favor of NANA on counts 2 and 3 subject to plaintiff's exception. All three counts were submitted against Monitor, but the jury, in answer to a special question, reported that all of the damages assessed against that defendant were based on the bootlegger count.

The case was tried on the basis that since he was a candidate for the United States Senate, publications about Roy would come under the same constitutional protection as where public officials are involved under *New York Times Co.* v. *Sullivan,* 376 U. S. 254. However, the Trial Court instructed the jury that if they found that the bootlegger publication was a public affair on a par with official conduct of public officials, they were to return a verdict in favor of NANA, and that in considering the case against Monitor they should follow instructions based upon the *New York Times* rule. He also instructed the jury, that if they found that the bootlegger publication would not touch upon or be relevant to Roy's fitness for public office "but was rather a bringing forward of the plaintiff's long-forgotten misconduct in which the public had no interest, then it would be a private matter in the private sector" and that they should consider the claim against both defendants under the law relating to private libels. The verdict against NANA shows that the jury found the publication to be in the private sector, for under the charge if they found otherwise, they were directed to bring in a verdict in favor of NANA.

The main issue in the case as it comes to us, therefore, is whether the bootlegger part of the publication could be found to be a purely private defamation and outside the constitutional protections of the *New York Times* rule which permits recovery only on proof that the publications were knowingly false or that they were false and were published with reckless disregard of the truth.

Reference was made to private libels in *Garrison* v. *Louisiana,* 379 U. S. 64, which arose out of the conviction of Garrison under a Louisiana criminal defamation statute. He had published a statement relating to the eight judges of the Criminal District Court of Orleans Parish in which he attributed the large backlog of cases to the inefficiency, laziness and excessive vacations of the judges, and impugned their motives in refusing to authorize the use of funds for undercover investigations of vice, which conduct he said raised questions of racketeer influences on the judges.

The Court, in discussing the "good motives" restriction appearing in the laws of many states, said "We need not be concerned whether this limitation serves a legitimate state interest to the extent that it reflects abhorrence that 'a man's forgotten miscon-

duct . . . *in which the public had no interest,* should be wantonly raked up, and published to the world, on the ground of its being true.' " (Emphasis on original) In a footnote (N. 8), the court recognized that different interests may be involved where purely private libels, totally unrelated to public affairs, are concerned and stated that nothing being said was to be taken as an expression of views on the impact of the Constitution in the "discrete area of purely private libels."

We are of the opinion that the constitutional protections of *New York Times Co.* v. *Sullivan* and later cases do not extend to all statements about public officials or candidates for office, but only to those which relate to their official conduct or fitness for office, and that there may be purely private libels against such persons which will be governed by State law, unrestricted by the Federal Constitution. We therefore do not accept the contention of the defendants that the "official conduct" limitation of *New York Times Co.* v. *Sullivan* has been discarded. *Time, Inc.* v. *Hill,* 385 U. S. 374 which dealt with nondefamatory matters as an invasion of privacy is not authority for the defendants' contention. *Curtis Publishing Co.* v. *Butts,* 388 U. S. 130, note 11.

Defendants contend that the bootlegging statement could not be found to be a "purely private defamation." *Garrison* v. *Louisiana, supra.* The evidence fails to reveal that any prosecution for criminal activity of any kind was ever brought against Alphonse Roy. His only brush with the law was in January 1923 when he was taken to the police station after a raid when he was present in a near beer parlor run by his brother. He was not charged with any violation and was released. This was 37 years before the publications here in question. Since prohibition ended in 1934, it is not probable that the bootlegger statement would be understood to refer to any activity within 26 years of the publication. Although there was evidence that there were rumors in the mid-twenties that plaintiff was a bootlegger, it was findable from the evidence that these had died out before he was elected to the Executive Council in 1932.

Although engaging in criminal activity even such as small-time bootlegging might be difficult to exclude from those things which affect fitness for office if it were alleged to have occurred recently its inclusion as a matter of law becomes less clear with the passage of a long period of time.

We are of the opinion that small-time bootlegging activity which occurred some 26 or 37 years in the past could be found to have lost its relevancy to prove the present fitness or unfitness of a candidate. The Trial Judge must have made this preliminary determination when he decided to submit the issue to the jury, and the jury must have so found when they determined the defamation to have been a private one.

Defendants contend that the Court's charge was so complicated, confused and misleading that the jury probably could not have understood or followed it. Complicated cases may require complicated charges, and this was a complicated case. The verdicts of the jury indicate an understanding of the instructions, and we think it is "reasonably certain that the jury understood them." *McLeod* v. *Caprarello,* 95 N. H. 343, 344; *Locke* v. *Cressy Company,* 108 N. H. 116, 118. We also disagree with the defendants' contention that in the private sector a lawful occasion existed as a matter of law, and we find no error in the charge relating to private libels. The other contentions of the defendants allege errors in the charge relating to malice and recklessness if the publication were found to be in the public sector. Since this was not the basis of the verdicts, it is unnecessary to consider these contentions.

The plaintiff requests that we determine whether the Court erred in directing a verdict in favor of NANA in the event the jury found the publication to be in the public sector. Since the verdicts were based on a finding that the publication was a private libel, the question is moot.

*Judgments on the verdicts.*

LAMPRON and GRIFFITH, JJ., did not sit; the others concurred.