Hillsborough
No. 78-171

MELDRIM THOMSON, JR.

v.

KEVIN R. CASH
AMOSKEAG PRESS , INC.

May 23, 1979

*Malloy & Sullivan*, of Manchester (*David L. Broderick* orally), for the plaintiff.

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*William S. Green* orally), for the defendants.

BROCK J.   This libel action is before us on defendants' exceptions to the Trial Court's (*Flynn*, J.) denial of their motions to dismiss and for summary judgment.

Defendant Cash is the author of a book entitled *Who the Hell is William Loeb?*, which was published by defendant Amoskeag Press, Inc. in December 1975. The book contains a paragraph concerning the plaintiff, Meldrim Thomson, Jr., as follows:

> Being a Republican was no asset in beginning a law practice during the Depression in Georgia, so Thomson went to work for a law book publishing firm in Brooklyn, N.Y., and rose to be managing editor. After about 20 years, he left, migrated to Orford and started Equity Publishing Co., taking with him certain accounts of the Brooklyn firm, including the printing of statutes for some Spanish-speaking countries.

Plaintiff brought this action for damages, alleging that the paragraph, especially the phrase "taking with him certain accounts of the Brooklyn firm," was defamatory and injured his reputation.

Defendants' motion to dismiss alleged that as a matter of law plaintiff's complaint fails to state a cause of action in libel. The trial court, after hearing, denied both the motion to dismiss and the motion for summary judgment.

" 'In determining whether, as a matter of law, a motion to dismiss should be granted, all facts properly pleaded and the reasonable inferences therefrom are construed most favorably to the plaintiffs. If a plaintiff is entitled to recover upon any state of facts findable under the pleadings, the motion to dismiss should be denied. *Aldrich v. Charles Beauregard & Sons*, 105 N.H. 330.' " *Jones v. Chase*, 110 N.H. 406, 407–08, 270 A.2d 102, 103 (1970).

■■ In order to be actionable, the language complained of must be defamatory, that is, it must tend to lower the plaintiff "in the esteem of any substantial and respectable group, even though it may be quite a small minority." W. PROSSER, TORTS § 111, at 743 (4th ed. 1971); RESTATEMENT (SECOND) OF TORTS § 559 (1977). The defamatory meaning must be one that could be ascribed to the words by "hearers of common and reasonable understanding." *Jones v. Walsh*, 107 N.H. 379, 381, 222 A.2d 830, 832 (1966). An action in libel cannot be maintained on an artificial, unreasonable, or tortured construction imposed upon innocent words, nor when only "supersensitive persons, with morbid imaginations" would consider the words defamatory. *Lambert v. Providence Journal Co.*, 508 F.2d 656, 659, *cert. denied*, 423 U.S. 828 (1975) (citations omitted). "No mere claim of the plaintiff can add a defamatory meaning where none is apparent from the publication itself." W. PROSSER, *supra* at 749. *See also* 53 C.J.S. *Libel and Slander* § 162(b), at 250–51 (1948).

The writ alleges that the defendants' words carry a meaning that the plaintiff "did deliberately, unethically, and wrongfully steal, appropriate and take accounts and business from his former employer." The threshold question for this court is whether the published words are reasonably capable of conveying the defamatory meaning or innuendo ascribed to them by the plaintiff. *Blanchard v. Claremont Eagle, Inc.*, 95 N.H. 375, 378, 63 A.2d 791, 793 (1949); *see, e.g., Powell v. Monitor Publishing Co.*, 107 N.H. 83, 85–86, 217 A.2d 193, 195 (1966).

■ Words alleged to be defamatory must be read in the context of the publication taken as a whole. Annot., 1 A.L.R.3d 844 (1965). The word "take", which is at issue here, has a host of meanings, ranging from "taking a bus" and "taking a picture" to "taking someone's life." OXFORD UNIVERSAL DICTIONARY 2123–25 (1955). In that regard, this court ruled more than a century ago:

> That the plaintiff had "taken things," certainly does not, standing alone, and by the mere force of the expression, import that he had fraudulently taken goods; and unless there is something in the precedent averments, or in the context, by which this alleged meaning is upheld, the innuendo has enlarged the sense of the words.

*Harris v. Burley*, 8 N.H. 256, 258 (1836). In that case the defendant had used a string of epithets to the effect that the plaintiff, a business partner, had been stealing him blind for years, and the whole taken together was found to be actionable.

■ The words complained of here, taken in context, are not such that their meaning is unequivocally defamatory. We think, however, that readers of ordinary intelligence and common understanding could reasonably have understood the words as implying fraud or wrongdoing. Because the words are susceptible of more than one meaning, whether they were used in the defamatory sense is a question of fact for the jury. *Blanchard v. Claremont Eagle, Inc.*, 95 N.H. 375, 378, 63 A.2d 791, 793 (1949); W. PROSSER, *supra* at 748.

Our holding here means only that the plaintiff is entitled to an opportunity to prove his allegation that the defamatory meaning was in fact the one "intended and understood." The plaintiff has the burden of proving that the defendant Cash's words, as reasonably understood by the readers, defamed him. *Chagnon v. Union-Leader Corp.*, 103 N.H. 426, 436, 174 A.2d 825, 831–32 (1961).

■■ That proof will necessarily involve evidence of how readers other than the plaintiff understood the language used. Defamation is in essence an invasion of a person's "relational" interest, analagous to

the tort of interference with advantageous relations. It is not enough that the plaintiff, when he reads the words, feels anger or shame. *See* W. PROSSER, *supra* at 737. "Publication," an essential element of the tort, requires "not only that the defamatory matter be brought to the attention of a third person but that he understood its defamatory significance. . . . Although the person making the communication intends it to convey a defamatory meaning, there is no defamation if the recipient does not so understand it." RESTATEMENT (SECOND) OF TORTS §§ 577, Comment (c), 563(b) (1977).

In its present form, the record does not indicate that third persons understood the paragraph complained of in its defamatory sense. Although in some jurisdictions pleadings in defamation are insufficient unless they specify the person or persons to whom the defamatory language was communicated, we think this is properly an issue for trial and that the absence of any such identification in the pleadings is not grounds for dismissing the action. *See* 50 AM. JUR. 2d *Libel and Slander* § 411 (1970). We hold that the trial court did not err in denying the defendants' motion to dismiss.

Defendants also excepted to the trial court's denial of their motion for summary judgment, which was supported by the affidavit of defendant Cash and other discovery products, including depositions of defendant Cash and of the plaintiff. In opposition to the motion, the plaintiff submitted an additional affidavit. The trial court ruled that on all three issues raised in the motion for summary judgment, genuine issues of fact existed that properly belonged to the trier of fact. *See* RSA 491:8-a (Supp. 1977); *Lortie v. Bois*, 119 N.H. 72, 398 A.2d 540 (1979).

In deciding whether to grant a motion for summary judgment, the court may consider facts contained in affidavits and depositions presented by both parties. RSA 491:8-a (Supp. 1977); *Lortie v. Bois supra*. "The defendants, moving for summary judgment, had the burden of showing the absence of any genuine issue and the material and pleadings on file are viewed in the light most favorable to the adversary." *New Hampshire York Co. v. Titus Constr. Co.*, 107 N.H. 223, 225, 219 A.2d 708, 710 (1966).

As one ground for summary judgment, the defendants claim that "the allegedly defamatory matter complained of did not injure plaintiff in his trade, business or profession." The plaintiff, in his writ, has alleged that "by means of said false, derogatory and scandalous libel, plaintiff has been wrongfully held up to scorn and ridicule and injured in his personal good name and professional reputation." It is assumed by all parties that the business referred to is that of law book publishing. The plaintiff has not alleged that he was injured in his profession as a public official. *See, e.g., Caldwell v. Crowell-Collier Publ. Co.*, 161 F.2d 333, 336 (5th Cir.), *cert. denied*, 332 U.S. 766 (1947).

In the circumstances of this case, the defendants are correct that the plaintiff may not maintain this action based on injury to his profession as a law book publisher. It is undisputed that from the time he became Governor of this State in January 1973, through all times relevant to this action, the plaintiff was not actively engaged in the publishing business. *See Harris v. Burley*, 8 N.H. 216 (1836); *see* W. PROSSER, *supra* at 762; 50 AM. JUR. 2d *Libel and Slander* § 103 (1970).

In this case, however, the plaintiff also alleges general damages or injury to his personal reputation as a result of the publication. Injury to reputation is an element of actual damages that may entitle a libel plaintiff to compensation. *Time, Inc. v. Firestone*, 424 U.S. 448 (1976); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349–50 (1974). The plaintiff does not need to allege special damages or specific monetary loss resulting from the publication where *New York Times* "malice" is shown. *Herbert v. Lando*, 99 S. Ct. 1635 (1979); *Gertz v. Robert Welch, Inc. supra; Chagnon v. Union-Leader Corp.*, 103 N.H. 426, 174 A.2d 825 (1961); *Richardson v. Thorpe*, 73 N.H. 532, 63 A. 580 (1906). We are mindful that in the libel area there is a possibility that "the jury may award not only nominal damages, but substantial sums in compensation of the supposed harm to the plaintiff's reputation without any proof that it has in fact occurred." W. PROSSER, *supra* at 762. Nevertheless, we find no reason at this time to depart from the settled rule that "[q]uestions of whether plaintiff has, in fact, sustained an injury or any damage, and, if he has, the nature and extent [thereof], are . . . questions of fact for determination by the jury or other trier of the facts." 25A C.J.S. *Damages* § 176(3), at 169 (1966); *Grant v. Town of Newton*, 117 N.H. 159, 162, 370 A.2d 285, 287 (1977); *see Chagnon v. Union-Leader Corp.*, 103 N.H. 426, 436, 174 A.2d 825, 831–32 (1962). *See also Time, Inc. v. Firestone supra.*

Because the question of damages is to be determined by the trier of fact, on this record, the trial judge properly denied the defendants' motion for summary judgment.

The defendants also claim that they are entitled to summary judgment because the alleged defamatory matter constituted "fair comment" on a subject of public interest, and that the plaintiff was a "public figure" who could not maintain the action in the absence of *New York Times* "malice." We treat these claims as alternative ways of claiming that the alleged defamation falls within the category of utterances protected by the First Amendment privilege.

Notwithstanding the plaintiff's allegation that he brought this action as "a private citizen of good reputation," it is undisputed that as of the publication date of the defendants' book, and in fact from January 1973 through December 1978, the plaintiff was Governor of

this State. As such he is unquestionably a "public official" covered by *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) and its progeny. *See Monitor Patriot Co. v. Roy*, 401 U.S. 265 (1971), *rev'g* 109 N.H. 441, 254 A.2d 832 (1969); *Rosenblatt v. Baer*, 383 U.S. 75 (1966), *rev'g* 106 N.H. 26, 203 A.2d 773 (1964).

■  If the defendants' statements concerning a public official are true, they are protected by the First Amendment. A public official can have a civil remedy for libel "only if he establishes that the utterance was false." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1974), *citing New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). *But see Baer v. Rosenblatt*, 106 N.H. 26, 29, 203 A.2d 773, 777 (1964), *rev'd other grounds*, 383 U.S. 75 (1966); *Hutchins v. Page*, 75 N.H. 215, 72 A. 689 (1909).

■  In the case before us, defendant Cash claims in his affidavit that he believes the language he used "to be a fair description of the events in question." The plaintiff claims that the statement is false; he claims that in founding Equity Publishing Company, he did not take any accounts belonging to his former employer. The plaintiff's claim is supported by his deposition, which details the circumstances of his setting up the new company. Because different inferences and conclusions may reasonably be drawn from the evidence in the record, the truth or falsity of the statement is a question to be decided by the trier of fact. 50 AM. JUR. 2d *Libel and Slander* § 182 (1970); *Maheu v. Hughes Tool Co.*, 569 F.2d 459, 466 (9th Cir. 1978).

■■  Even if the plaintiff establishes that the defendants' statement is false, he can recover only on clear and convincing proof that the defendants acted "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. at 280. The question before us on this motion for summary judgment is only whether the defendants have met their burden of showing that no genuine issue of fact exists as to the existence of *New York Times* "malice." In our opinion, the affidavits and depositions already in the record support the trial court's conclusion that such an issue is presented.

As the trial court stated, the applicable standard for the defendants' conduct has been articulated by the U.S. Supreme Court:

> Reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.

*St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). *See also Herbert v. Lando*, 99 S. Ct. 1635 (1979); *Time, Inc. v. Pape*, 401 U.S. 279, 291–92 (1971). Defendant Cash's methods of investigation are, of course, relevant to a determination of the issue. "[A]ctual malice may be inferred when the investigation for a story which is not 'hot news' was grossly inadequate in the circumstances." *Vandenburg v. Newsweek, Inc.*, 441 F.2d 378, 380 (5th Cir.) *cert. denied*, 404 U.S. 864 (1971), *citing Curtis Publishing Co. v. Butts*, 388 U.S. 130, 156–58 (1966).

In this jurisdiction, the existence of facts which would entitle a defendant to a privilege in defamation actions is an issue to be determined by a jury. *See, e.g., Supry v. Bolduc*, 112 N.H. 274, 277, 293 A.2d 767, 769 (1972); *Jones v. Walsh*, 107 N.H. 379, 381–82, 222 A.2d 830, 832 (1966); *Rosenblatt v. Baer*, 383 U.S. 75, 87 (1966). The privilege claimed here depends on defendant Cash's subjective awareness. *Herbert v. Lando*, 99 S. Ct. 1635 (1979). "Proof of such a mental state must usually be inferred from circumstances difficult to develop on a motion for summary judgment." *Vandenburg v. Newsweek, Inc.*, 441 F.2d at 380; *contra, Wolston v. Readers Digest Ass'n, Inc.*, 578 F.2d 427, 433 (D.C. Cir. 1978); *cert. granted*, 99 S. Ct. 832 (1979). At trial the plaintiff will bear "a heavy burden involving proof of the state of mind of the defendants [but he] is entitled to the benefit of all competent evidence to support [his] contentions." *Roy v. Monitor-Patriot Co.*, 112 N.H. 80, 82, 290 A.2d 207, 208–09 (1972); *see Herbert v. Lando*, 99 S. Ct. 1635 (1979). While we do not and cannot, at this stage in the proceeding, determine whether he can meet that burden, we hold that the trial court properly ruled that "sufficient evidence has been submitted to raise a genuine issue of fact for the trier of fact to determine whether the defendants acted with reckless disregard as to the truth of the publication."

Our ruling here is limited to the issues before us at this stage of the proceedings.

*Exceptions overruled.*

BOIS, J., did not sit; the others concurred.