CHAULK SERVICES, INC.

v.

Scott FRASER.

Civ. No. 89–570–D.

United States District Court,
D. New Hampshire.

Dec. 12, 1990.

---

Robert B. Carpenter, Boston, Mass., for plaintiff.

Scott Fraser, pro se.

### ORDER

STAHL, District Judge.

In this civil action, Chaulk Services, a provider of ambulance and patient services to hospitals, nursing homes, health care agencies, municipalities and private patients, seeks a permanent injunction preventing Scott Fraser, a former employee, from

> making and publishing any statement to the effect that Chaulk has been indicted or otherwise charged with or investigated or prosecuted for the commission of a federal crime.

Complaint, at ¶ 3. Chaulk also seeks monetary compensation for allegedly defamatory statements already made by defendant Fraser.

Jurisdiction is based on 28 U.S.C. § 1332; plaintiff is a citizen of Massachusetts, defendant is a citizen of Tennessee, the amount in controversy is alleged to exceed $50,000. Before the Court is plaintiff's motion for partial summary judgment.

### 1. Background

On December 27, 1987, Chaulk Services hired Scott Fraser to work as an emergency medical technician ("EMT") in Manchester, New Hampshire. According to Fraser, throughout the term of his employment, he and other employees complained to Chaulk about inadequacies in its emergency medical care. Fraser asserts that Chaulk was unresponsive and, at the urging of fellow employees, he attempted to organize a union.

On August 9, 1990, Fraser formally petitioned the National Labor Relations Board (NLRB) for an election. Four days later, Fraser sustained a hand injury which required him to miss work for approximately eight weeks. During his absence, Chaulk hired a replacement. When Fraser attempted to return, he was advised that his position had been filled and that Chaulk had no need for an additional EMT.

Fraser filed an unfair labor practice claim with the NLRB.[1] As described by plaintiff,

> Fraser thereafter embarked upon a program of public demonstrations and commentary of and concerning Chaulk and its business. For example, he demonstrated outside Newton City Hall (Newton, Massachusetts) and he also demonstrated outside certain nursing home facilities that were serviced by Chaulk in

---

1. The NLRB may issue an unfair labor practice complaint whenever one person charges that another has engaged in an unfair labor practice. 29 U.S.C. § 160(b). As defined in 29 U.S.C. § 158(a), it is an unfair labor practice for an employer

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title.

Presumably, defendant here filed charges alleging that he was replaced because of his union activities, in violation of this section of the Labor–Management Relations Act.

an attempt to affect adversely those relationships and secure his reinstatement. Plaintiff's Pretrial Memorandum, p. 2. He also prepared leaflets and distributed them throughout downtown Manchester, "[t]o draw attention to the injustice that was done upon an EMT working for the City of Manchester by Chaulk Ambulance." May 4, 1990, Deposition of Scott Fraser, at p. 31. (Plaintiff's motion for summary judgment, Exhibit C).

On November 16, 1989, the NLRB held a hearing to consider the charges filed by Fraser and to determine whether there was probable cause to issue a complaint against Chaulk. On November 20, the NLRB concluded that there was probable cause to proceed. That same day, Fraser printed and distributed handbills entitled "UPDATE," which stated:

Chaulk Ambulance Company has been INDICTED by the Federal Government. On Friday November 17th the Federal Labor Board met in Boston to determine if charges against Chaulk on behalf of Scott Fraser a discharged employee were with merit. After reviewing all the evidence the board determined that the employee was wrongfully terminated in direct violation of Federal Laws. Further that the Federal Government will now throw their support behind the employee and bring Chaulk Ambulance to TRIAL.

On December 20, 1989, Chaulk instituted this action based on its contention that these statements were defamatory.[2]

### 2. Discussion

Chaulk asks the Court to rule that it is entitled to partial summary judgment on the basis that, as a matter of law, defendant Fraser is liable for defamation.

The function of summary judgment is to cut through the formal allegations of facts in the pleadings and determine whether a trial is necessary. *See Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. de-*

nied 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); Rule 56, Fed.R.Civ.P., Advisory Committee's note to 1963 amendment. The burden is on the moving party to establish the lack of a genuine, material, factual issue, *Finn v. Consolidated Rail Corp.,* 782 F.2d 13, 15 (1st Cir.1986), and the Court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernible from the evidence. *Oliver v. Digital Equip. Corp.,* 846 F.2d 103, 105 (1st Cir.1988).

To prevail in this motion, defendant must demonstrate that there is no genuine issue as to any fact material to plaintiff's defamation claim. The substantive standard applied to claims for defamation was summarized in *Nash v. Keene Publishing Corp.,* 127 N.H. 214, 219, 498 A.2d 348, 351 (1985): "for actionable libel, there must be publication of a false statement of fact that tends to lower the plaintiff in the esteem of any substantial and respectable group of people." (Citations omitted.) New Hampshire law makes clear that "the defamatory meaning must be one that could be ascribed to the words by 'hearers of common and reasonable understanding.'" *Thomson v. Cash,* 119 N.H. 371, 373, 402 A.2d 651, 653 (1979).

■ The record presented in this case demonstrates that Scott Fraser distributed a leaflet which stated that Chaulk Ambulance had been "INDICTED" by the federal government. The record also demonstrates that Chaulk was not "indicted". Thus, there is no question that Fraser published a false statement of fact. The Court also finds that there can be no material dispute over the effect of this statement: hearers of common and reasonable understanding might disagree about the precise meaning of the word "indict," but under

---

**2.** On December 28, 1989, the court (Devine, C.J.) issued a preliminary injunction and ordered: That the defendant, Scott Fraser, and all persons or entities acting in cooperation or concert with defendant be, and they herewith are, pending further rulings, enjoined and re-

strained from publishing orally or in written form any untrue allegations that plaintiff, Chaulk Services, Inc., or any of its agents, servants, or employees, have been charged with criminal offenses.

any interpretation, that word is plainly defamatory.[3]

 To obtain relief in a defamation action, in addition to proving publication of a defamatory statement, plaintiff must show either that such publication caused "special damage"[4] or that the statement falls within one of the *"per se"* categories in which special damages are assumed.[5] Plaintiff here contends that defendant's statement was defamatory *"per se"* because it imputed that plaintiff committed a crime.

Under New Hampshire law,

> If one falsely and without a privilege to do so publishes spoken words which impute to another conduct constituting a criminal offense chargeable by indictment or information either at common law or by statute and of such a kind as to be characterized as morally reprehensible, he is liable to the person to whom such wrongdoing is imputed without proof of special damage.

*Jones v. Walsh,* 107 N.H. 379, 380, 222 A.2d 830, 832 (1966). It is not necessary that the words used "charge the plaintiff with a crime in a technical or direct manner." *Id.* Rather, the test is "whether the words used taken in the sense in which they are reasonably understood under the circumstances by persons familiar with the language used are capable of the defamatory construction of accusing the plaintiff with a criminal offense." *Id.* This Court is of the opinion that hearers of common and reasonable understanding could ascribe such a meaning to the defendant's words. Whether they did under the circumstances of this case and whether the language suggested that plaintiff engaged in "morally reprehensible" criminal conduct are ques-

tions to be decided by a trier of fact. *See Jones, supra.*

*3. Conclusion*

For the reasons stated hereinabove, the Court concludes that the statement challenged in this action was defamatory. Whether that statement was "defamatory *per se*" and what damages, if any, the plaintiff suffered as a result of its publication, are questions to be resolved by a trier of fact. Accordingly, plaintiff's motion for partial summary judgment (document no. 26) is denied.

SO ORDERED.

---

3. It is also settled in New Hampshire that "[q]uestions of whether plaintiff has, in fact, sustained an injury or any damage, and, if he has, the nature and extent [thereof], are ... questions of fact for determination by the jury or other trier of the facts." *Thomson, supra,* 119 N.H. at 376, 402 A.2d 651.

4. Special damage is defined as "the loss of something having economic or pecuniary val-

ue." Restatement (Second) of Torts, § 575 comment b (1977).

5. A person may be held liable for defamation without proof of special harm if the publication imputes (a) a criminal offense; (b) a loathsome disease; (c) matter incompatible with the plaintiff's business, trade, profession, or office; or (d) serious sexual misconduct. Restatement (second) of Torts § 570 (1977).