**John J. O'BRIEN, Plaintiff, Appellee,**

v.

**PAPA GINO'S OF AMERICA, INC.,**
**Defendant, Appellant.**

**No. 85–1231.**

United States Court of Appeals,
First Circuit.

Argued Aug. 8, 1985.

Decided Jan. 2, 1986.

Sterling H. Schoen, Jr. with whom Wiggin & Nourie and Edward L. Cross, Manchester, N.H., were on brief, for defendant, appellant.

Randolph J. Reis with whom Brown & Nixon and Jill A. Gonya, Manchester, N.H., were on brief, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

This is an appeal from a jury verdict awarding plaintiff/appellee $448,200 in damages arising from his dismissal from the defendant/appellant's employment. The appellant claims error in the district court's refusal to direct a verdict in its favor, grant a judgment notwithstanding the verdict, or allow a new trial.

The lawsuit arose from the following set of facts. In 1973 appellee John O'Brien was hired by appellant Papa Gino's of America, Inc., a "fast food" restaurant chain. O'Brien continued working there for approximately nine and a half years, up until September 1982. At that time O'Brien was an area supervisor for 28 stores and 450–550 employees, and was earning a salary of approximately $37,000.

Sometime during 1982 O'Brien had a falling out with higher level management which ultimately led to his discharge on September 7, 1982. Testimony by the parties and their witnesses was sharply contrasting in regard to the events leading to O'Brien's dismissal. O'Brien contended he was fired for failing to promote an employee under his supervision who was the son of one of plaintiff's superiors, and godson to the president of Papa Gino's. The appellee on the other hand contended that O'Brien was dismissed solely for poor job performance and for violating a company policy prohibiting employees from using illegal drugs.

After O'Brien was confronted by a superior with rumors that he had been seen using drugs outside of work, O'Brien took a polygraph examination and answered questions relating to his alleged drug use. O'Brien later claimed he was forced to take

the test under the threat of losing his job. He also stated that during the examination he was asked about matters that were unrelated to his employment and which he was entitled to keep private. Appellant on the other hand claimed that O'Brien took the polygraph examination completely voluntarily to dispell the suspicion that he used drugs. When the examiner's report from the polygraph test indicated that he believed O'Brien was lying about using drugs, O'Brien was dismissed.

O'Brien filed a complaint in the Hillsborough County Superior Court of the State of New Hampshire, and the defendant requested removal to federal court. Following a week-long trial, the jury answered seven special verdict questions, finding in favor of O'Brien on his claims of defamation and invasion of privacy, and in favor of Papa Gino's on the wrongful discharge claim.

Papa Gino's appeals the verdicts on several grounds. First, it argues that the jury's answers to two of the seven special verdict questions are "hopelessly inconsistent" with each other, thus requiring a remand for clarification of the jury's findings. *See Andrasko v. Chamberlain Mfg. Corp.*, 608 F.2d 944, 947 (3d Cir.1979). Appellant refers to the following two special verdict questions:

*Question No. 2*:

Based on a preponderance of the evidence, do you find that the discharge of the plaintiff O'Brien was in violation of public policy in that Mr. O'Brien was discharged for either performing an act which public policy favors or for refusing to perform an act which public policy condemns?

*Answer*: No.

*Question No. 3*:

Based on a preponderance of the evidence, do you find that the actions of the defendant, Papa Gino's of America, Inc., with reference to allegations of drug abuse by plaintiff O'Brien and the meth-

ods adopted by the defendant in its investigation of such allegations would be highly offensive to a reasonable person and were invasive of the plaintiff's privacy?

*Answer*: Yes.

■ Appellant engages in an exercise of analytical acrobatics to construe these answers in a manner that will make them contradict each other. Our inquiry with respect to potentially conflicting special verdicts, however, is not whether *any possible* construction exists that would tend to show jury confusion. The court must attempt to harmonize the jury's answers if it is possible to do so under a fair reading of them. *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963); *Andrasko, supra* at 947.

Special verdict question number two was posited by the court to determine whether the necessary elements for a claim of wrongful discharge had been established. Under New Hampshire law, a plaintiff must show, first, that the defendant was motivated by bad faith, malice, or retaliation and, second, that the plaintiff was discharged because he performed an act that public policy would encourage, or refused to do something that public policy would condemn. *Cloutier v. Great Atlantic & Pacific Tea Co., Inc.*, 121 N.H. 915, 436 A.2d 1140, 1143, 1144 (1981). At trial, the plaintiff's attorney tried to prove this second element by arguing to the jury that O'Brien had acted in accordance with public policy when he resisted taking and answering truthfully an invasive polygraph test. The defense, on the other hand, argued that O'Brien's attempt to deceive the polygraph examiner by visiting a hypnotist beforehand was actually against public policy.

■ In its answer to special verdict question one, the jury found that O'Brien's discharge was motivated by bad faith, malice, or retaliation.[1] This satisfied the first

---

1. The first special verdict question was as follows:

*Question No. 1*:

element of the *Cloutier* test for wrongful discharge. In its answer to special verdict question two, however, the jury indicated that O'Brien had failed to establish the second, public policy element. Thus, in effect the jury held for defendant on the wrongful discharge issue.

■ Special verdict question three related to a separate cause of action, O'Brien's invasion of privacy claim. Here the jury was asked to state whether Papa Gino's investigative techniques "would be highly offensive to a reasonable person and were invasive of plaintiff's privacy." This question received an affirmative answer, indicating the jury's belief that O'Brien had been coerced into taking the polygraph examination. We see no logical difficulty in accepting together the jury's findings that O'Brien's action regarding the polygraph was not favored by public policy while at the same time the defendant had improperly pressured O'Brien into taking the examination. Consequently we decline to rule these special verdict questions irreconcilable.

■ Papa Gino's second claim of error is that it was entitled to a directed verdict because the plaintiff presented no evidence at all that he was discharged for a retaliatory motive, which was essential to proving all his claims. The transcript belies such an assertion. At least two witnesses, Michael Valerio and William Kindler, gave testimony from which a jury could infer that O'Brien was fired for his failure to promote the particular Papa Gino's employee mentioned above. If the jury chose to give this testimony full credence, it was well within its province to do so. *Oxford Shipping Co., Ltd. v. New Hampshire Trading Corp.*, 697 F.2d 1, 5 (1st Cir.1982).

■ Papa Gino's third claim is that O'Brien's right to privacy could not have been invaded since he essentially contracted away such rights with regard to his use of drugs. Because the company personnel

manual forbids drug use by employees, the appellant reasons that O'Brien impliedly gave permission in his employment contract for the company to make whatever investigations it deemed necessary, including the polygraph examination. Even if we were to read O'Brien's agreement with Papa Gino's so broadly as to give implied permission for polygraph examinations generally, it would not negate the jury's finding that the particular investigation conducted was "highly offensive" and invasive of plaintiff's privacy. Such a finding of egregious offensiveness in the particular case would indicate that the defendant's conduct exceeded the scope of any consent O'Brien had arguably given by accepting employment at Papa Gino's.

■ Appellant's fourth argument relates to the requirement of proximate cause for a finding of liability. It asserts that the report from the polygraph examination was not the proximate cause of O'Brien's damages, because, by O'Brien's own allegation, he was fired not for failing the polygraph test, but rather for not promoting the son of his supervisor. O'Brien responds that the promotion issue was indeed the *motive* for his dismissal, but it was the results of the offensive polygraph test that ultimately convinced the executive committee to vote to dismiss him. Papa Gino's own witnesses testified that the committee's decision was made very shortly *after* O'Brien failed the test. In this context, it was a factual question for the jury to decide whether, according to proximate cause analysis, the polygraph results were a "substantial factor" in the committee's decision to terminate O'Brien. Such findings by the jury are conclusive unless they are clearly against the weight of the evidence. We do not find them to be so here and, therefore, reject appellant's argument on this issue. *See Coffran v. Hitchcock Clinic, Inc.*, 683 F.2d 5, 11 (1st Cir. 1982) (citing New Hampshire rule that cau-

Based on a preponderance of the evidence, do you find that the discharge of the plaintiff, John J. O'Brien, was motivated by bad faith, malice, or retaliation?

*Answer*: Yes.

sation is a question for the jury); *Tullgren v. Amoskeag Manufacturing Co.*, 82 N.H. 268, 133 A. 4 (1926) (same).[2]

Appellant's fifth claim is that it cannot be held liable under the defamation charge because (i) the statement "O'Brien was terminated for drug use" was true, and (ii) even if false, the statement was conditionally privileged and not made with malice, recklessness or ill will. We address each assertion in turn.

 As to appellant's defense of truth, it is first necessary to examine the jury's affirmative answer to special verdict question one, which states, "[b]ased on a preponderance of the evidence, do you find that the discharge of plaintiff, John J. O'Brien, was motivated by bad faith, malice or retaliation?" The form of this question is important, for it does not ask whether the discharge was *only* motivated by retaliation. Rather, it merely asks whether retaliation served as a motive for the discharge, the implication being that other motives or causes of the discharge could likewise have been present. Thus, it appears that while on the one hand the jury found O'Brien's discharge to be substantially caused by the polygraph test results —indeed, such a finding was necessary for the jury to award lost wage damages for the invasive polygraph test—the jury *also* found retaliatory motives to be present, as evidenced by its answer to special verdict question one.[3]

 Beginning with the premise of a jury finding of two factors as contributing to O'Brien's discharge, we find it necessary to reject Papa Gino's claim regarding the truthfulness of its assertion as well as the claim to conditional privilege. As to the defense of truth, it is first necessary to examine the statement at issue, that "O'Brien was terminated for drug (cocaine) use." The truth, however, under the apparent jury finding of two causes, goes as follows: "O'Brien's termination was *largely* due to drug use, *but we also had retaliatory motives arising from a personal grudge.*" So, while Papa Gino's actual statement was *substantially* true—indeed, the above proximate cause analysis requires this conclusion—it was not the *whole* truth. And, the jury apparently concluded that, under the circumstances, not to tell the whole truth was in effect to lie. Thus, the jury, based on its factual findings as to the actual causes of O'Brien's termination, regarded the employer's explanation as *not* conveying all the facts, and hence, as false. Given that this jury finding of falsity is inextricably tied to its defensible factual findings as to the cause of termination, we see no basis for overturning it on appeal. Accordingly, we reject appellant's defense of truth.

---

**2.** Papa Gino's did not contend on appeal that the award of lost wages was an improper element of damages in an invasion of privacy claim, so we will not address the issue. There is, however, case law supporting such an award where the invasion of privacy is shown to have proximately caused the lost wages. *See, e.g., Douglass v. Hustler Magazine, Inc.*, 769 F.2d 1128, 1143–44 (7th Cir.1985); *Thorne v. City of El Segundo*, 726 F.2d 459 (9th Cir.1983); *Alberts v. Devine*, 395 Mass. 59, 479 N.E.2d 113 (1985).

**3.** We do not see a contradiction in these apparent jury findings of two causes for O'Brien's termination. As the district court below noted in its instructions, the doctrine of proximate cause allows the jury to find more than one substantial factor or cause of O'Brien's discharge. *See generally Prosser and Keeton on Torts*, pp. 265–268 (5th ed. 1984). At trial, evidence was presented suggesting the presence of both retaliatory motives and the polygraph results as explanations for O'Brien's discharge. While each trial counsel emphasized the causal explanation most favorable to his case, the record before us does not indicate any suggestion that the two views are mutually exclusive. Indeed, we find it quite rational for the jury to have regarded *both* factors as contributing to the discharge. Given our reading of special verdict question one, we also find it entirely plausible for the jury to have found retaliatory motives to be not as substantial causally as the polygraph results. The polygraph results could then remain, although not by necessity, as the preeminent substantial factor.

Thus, given that the apparent jury conclusion of two factors as contributing to O'Brien's discharge is defensible both factually in terms of the record and legally in terms of the requirements of proximate cause, we will not *sua sponte* overturn it on appeal.

As to the conditional privilege issue, we note the jury's answer to special verdict questions one and six. As stated above, the jury's answer to special verdict question one indicated a general finding of retaliatory motives or malice in O'Brien's discharge.[4] In its instructions on question six, the district court, after explaining the elements of a conditional privilege, noted that such privilege would not exist if the jury found "malice." The court then defined malice as making statements "with knowledge that they were false, with a high degree of awareness of their probable falsity, or with serious doubts as to their truth." These instructions generally comport with the case law. *See, e.g., Arsenault v. Allegheny Airlines, Inc.,* 485 F.Supp. 1373, 1379 (D.Mass.), *aff'd,* 636 F.2d 1199 (1st Cir.1980), *cert. denied,* 454 U.S. 821, 102 S.Ct. 105, 70 L.Ed.2d 93 (1981); *Thomson v. Cash,* 119 N.H. 371, 402 A.2d 651 (1979); *Jones v. Walsh,* 107 N.H. 379, 222 A.2d 830 (1966); *Baer v. Rosenblatt,* 106 N.H. 26, 203 A.2d 773, *rev'd on other grounds,* 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1964); *Blanchard v. Claremont Eagle,* 95 N.H. 375, 63 A.2d 791 (1949); *Bander v. Metropolitan Life Ins. Co.,* 313 Mass. 337, 344, 47 N.E.2d 595 (1943).

After the above instructions, special verdict question six posed the issue to the jury, "Based on a preponderance of the evidence, do you find that such defamatory statement was privileged?" The jury answered "no." Thus, the jury apparently concluded that, given Papa Gino's knowledge of its own retaliatory motives against O'Brien, Papa Gino's omission to explain such motives could only be regarded as a *purposeful* misrepresentation, and hence, not only to convey a falsity but to act in reckless disregard for the truth. There is sufficient testimony in the record to support a jury finding of knowledge on Papa Gino's part that *both* retaliatory motives and the polygraph results brought about

O'Brien's discharge. It follows that the omission to explain retaliatory motives could be rationally viewed as a purposeful misrepresentation, and hence as infected with malice. We further note that the question of defendant's entitlement to a claim of conditional or qualified immunity is clearly one for the trier of fact. *Pickering v. Frink,* 123 N.H. 326, 461 A.2d 117 (1983). Accordingly, based on the jury's rational answers to special verdict questions one and six, we reject appellant's claim of entitlement to a conditional privilege.

We turn now to Papa Gino's sixth assertion, that the district court's denial of defendant's motion for a new trial was clearly in error. Appellant raises four grounds for this claim.

First, appellant claims error in the court's refusal to allow its counsel to inquire about the reason one witness was asked to take a polygraph test. Under examination by plaintiff's counsel, John Mackor, defendant's witness and employee, testified that he had taken two polygraph examinations, one sometime regarding his employment, and one the night before he testified. At a side bar conference, defendant's counsel explained that he had asked Mackor to take the polygraph test after Mackor told him, among other things, that O'Brien had tried to bribe him in return for favorable testimony. Defendant's counsel stated that he would only let Mackor testify if he passed the polygraph examination. He then asked the court's permission to question Mackor about the events leading to the administration of the second polygraph examination, which the court denied. Appellant's objection on appeal, therefore, is that the court "left unexplained on the record, for the jury to consider, the fact that one of the defendant's key witnesses had, on the eve of trial, been subjected to a polygraph examination." This, appellant contends, severely prejudiced its case because it implied, in combination with other

---

**4.** This finding was not made in the precise context of malice such that one possessing a conditional privilege could no longer invoke it. Special verdict question six, by contrast, did address the issue of malice in the contest of defamation law.

testimony, that Papa Gino's routinely and improperly subjected its employees to polygraph examinations.

 ˙ Papa Gino's argument has failed to convince us that there was reversible error in the court's handling of this matter. Papa Gino's counsel did not object to the line of questioning about the second polygraph examination until plaintiff's counsel inquired as to *who* had asked Mackor to take it. At this point Papa Gino's counsel objected on grounds of relevancy.[5] If appellant's concern had been that the questioning implied Papa Gino's routinely subjected its employees to polygraph examinations, the question put to Mackor would have served instead to assuage such implication by identifying Papa Gino's counsel as the inquisitor in this instance rather than Papa Gino's. Moreover, assuming that Papa Gino's counsel is regarded as Papa Gino's agent (and hence that it nonetheless appears Papa Gino ordered the test), the implication of the polygraph test on the eve of trial seems much more strongly to be one of revealing a desire to corroborate proposed testimony, and thus seems hardly arbitrary but rather indicative of sound precautions with respect to the veracity of one's own witness. The polygraph test, in other words, was not in connection with Mackor's fitness as an employee, but rather with his testifying at a trial unrelated to his own employment. Accordingly, we do not accept Papa Gino's characterization of this testimony as so damaging as to render its admission grounds for a new trial.

 Appellant's second assertion that the court, at the very least, should have given the jury a limiting instruction on this matter comes too late because that request should have been addressed to the trial court in the first instance. Fed.R. Civ.P. 51. When counsel fails to object to jury instructions in a timely manner, we will not reconsider them on appeal except in cases where clear error or obvious injustice exists. *City of Newport v. Fact Con-*

*certs, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Morris v. Travisono,* 528 F.2d 856 (1st Cir.1976).

Appellant's third ground for requesting a new trial is an objection to the admission of testimony by two former Papa Gino's employees that they had been asked to take polygraph examinations in connection with suspected drug use and employee theft. Papa Gino's argues that the prejudicial effect of this testimony far outweighed any probative value in that it caused the jury to deliver a verdict that punished Papa Gino's for what the jury considered past mistreatment of employees other than the plaintiff.

Since appellant concedes that the testimony of the former employees had at least some relevance to the case, we begin with the assumption that it was admissible so long as not prohibited by statute, the Constitution, or judicial rules. Fed.R.Evid. 402. Appellant argues that Rule 403 does exclude its admissibility because it allows relevant evidence to be excluded when it poses a danger of unfair prejudice that substantially outweighs its probative value. *See, e.g., Bowden v. McKenna,* 600 F.2d 282, 284–85 (1st Cir.), *cert. denied,* 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979); Fed.R.Evid. 403.

 The probative value of the employees' testimony here was threefold: (1) it tended to establish that Papa Gino's had a regular practice of asking employees to take polygraph examinations, Fed.R.Evid. 406; (2) it was relevant to showing the defendant's intent and motive in requesting that O'Brien take the examination, Fed.R. Evid. 404(b); and (3) it contradicted testimony by defendant's witness that Papa Gino's did not ask its employees to take polygraph examinations. Naturally, this testimony was unfavorable to the defendant's case, but we must keep in mind that it is only *unfair* prejudice with which we are concerned. *United States v. McRae,* 593 F.2d 700 (5th Cir.), *cert. denied,* 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979).

---

**5.** It was only later in the trial that Papa Gino's counsel requested the court's permission to elic-

it testimony on the circumstances surrounding the second polygraph examination.

**1076**

Additionally, we note that a trial judge has broad discretion in ruling on the admissibility of evidence. *See, e.g., United States v. Serlin,* 707 F.2d 953, 959 (7th Cir.1983). We, therefore, conclude that the court did not err in admitting the testimony of the former employees as to their previous polygraph examinations.

As a fourth and final ground for seeking a new trial, appellant asks us to find that the jury's verdict was against the weight of the evidence and should be set aside. Papa Gino's lists six items it feels are incompatible with the jury's findings, and nine instances allegedly demonstrating appellee O'Brien's tendency toward dishonest and/or illegal conduct.

■■■ The common thread running through all of these items is the issue of credibility. No subject matter is more clearly within the exclusive province of the fact-finder than this. *See, e.g., Anderson v. City of Bessemer City,* — U.S. —, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Oxford Shipping Co., Ltd. v. New Hampshire Trading Corp.,* 697 F.2d 1, 5 (1st Cir.1982); *N.L.R.B. v. Mass. Machine & Stamping, Inc.,* 578 F.2d 15 (1st Cir.1978). Questions of credibility are factual findings that must on appeal be resolved in favor of affirming the trial court's findings, unless shown to be clearly erroneous. *United States v. United States Gypsum,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *Codex Corp. v. Milgo Electronic Corp.,* 717 F.2d 622, 627 (1st Cir.1983), *cert. denied,* 466 U.S. 931, 104 S.Ct. 1719, 80 L.Ed.2d 191 (1984); *Holmes v. Bateson,* 583 F.2d 542, 552 (1st Cir.1978); Fed.R.Civ.P. 52(a). In this context, clear error should be found if the factual findings are against the clear weight of the evidence, *Barbe v. Drummond,* 507 F.2d 794 (1st Cir.1974), and, if we are "left with the definite and firm conviction that a mistake has been committed." *Evans v. United States,* 319 F.2d 751, 753 (1st Cir.1963).

■■■ We cannot say that the record here leaves us with such an impression. Although the appellant cites numerous items it believes supports its version of the facts, the appellee has set out an entirely different but equally plausible version. When there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City,* — U.S. —, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Particularly because the findings in this case turn on the credibility of witnesses whom the jury had full opportunity to see and hear, *see General Dynamics Corp. v. Occupational Safety and Health Review Comm'n,* 599 F.2d 453 (1st Cir. 1979), we refuse to overturn the jury's findings.

Appellant's final point raised in this appeal relates to the jury's award of damages, which amounted to $448,200. The jury awarded $398,200 on the invasion of privacy claim, of which $358,000 was for lost wages, and $50,000 on the defamation claim. Papa Gino's asserts, first, that the lost wages figure is greatly in excess of the actual wages O'Brien lost and will lose as a result of his dismissal. Second, it argues that the defamation award is clearly excessive because the challenged statements were not widely publicized (*i.e.,* not beyond Papa Gino's employees) and because O'Brien's damages simply could not have amounted to the figure awarded.

■■■ In a challenge to a jury award, we are limited to examining whether evidence in the record supports the verdict. If the jury award has a rational basis in evidence, we must affirm it. *See Computer Systems Engineering, Inc., v. Qantel Corp.,* 740 F.2d 59, 67 (1st Cir.1984).

■■■ At trial, O'Brien called as an expert witness an economist who testified that O'Brien had lost past wages and benefits in the amount of $186,461, and future wages and benefits in the amount of $699,968. The economist was cross examined, and Papa Gino's did not rebut his testimony with its own expert. Since the jury ultimately awarded $358,000 for lost wages and benefits, less than half the amount calculated by plaintiff's economist, we cannot say the award was clearly against the

weight of the evidence. *See Thomson v. Cash,* 119 N.H. 371, 402 A.2d 651 (1979). Furthermore, although Papa Gino's flatly states .that the $50,000 award for defamation was excessive, we find no authority that holds that such an amount, on its face, should be found excessive. *See generally Chagnon v. Union Leader Corp.,* 103 N.H. 426, 174 A.2d 825 (1961), *cert. denied,* 369 U.S. 830, 82 S.Ct. 846, 7 L.Ed.2d 795 (1962). Since it was not against the weight of the evidence offered by O'Brien on the issue of damages and emotional suffering, we will not disturb the jury's award.

In light of the foregoing analysis, we affirm all aspects of the trial court's judgment.

*Affirmed.*