UNITED STATES of America,
Plaintiff, Appellee,

v.

Jose M. CRUZ JIMENEZ,
Defendant, Appellant.

No. 88–1860.

United States Court of Appeals,
First Circuit.

Heard Oct. 5, 1989.

Decided Jan. 11, 1990.

**2**

Ardín Terón, San Juan, P.R., was on brief, for defendant, appellant.

Jorge E. Vega Pacheco, Asst. U.S. Atty., San Juan, P.R., with whom Daniel F. López Romo, U.S. Atty., Hato Rey, P.R., was on brief, for plaintiff, appellee.

Before BOWNES and TORRUELLA, Circuit Judges, and BROWN,* Senior Circuit Judge.

TORRUELLA, Circuit Judge.

After a jury trial in the United States District Court for the District of Puerto Rico, José M. Cruz Jiménez was convicted of trespass and forgery of counterfeit currency, and possession with intent to distribute cocaine. Defendant appeals his conviction, contending that some evidence introduced at trial should have been excluded as violative of the Fourth Amendment of the United States Constitution. We affirm the conviction.

## I. BACKGROUND

On November 9, 1987, Denise Cátala used a counterfeit $100 bill to purchase an airplane ticket. The ticket agency, recognizing the bill as a counterfeit, contacted the Secret Service, which sent agents to question Cátala about the source of the note on November 12, 1987. According to Cátala, on the evening of November 8, 1987, she went to a dance with the defendant, who had rented a room at the El Río Motel. At that motel, like at other motels of its genre, patrons pay a fee at the entrance to a fenced courtyard, and may select any vacant room, as signified by an open garage door. That night, the defendant gave her the bill, and the next day contacted her with the request that she use the money to purchase an airline ticket for the defendant's girlfriend. After talking with the agents, Cátala agreed to cooperate with the government.

To corroborate the story of Cátala ("informant"), a telephone call was placed to

---

* Of the Fifth Circuit, sitting by designation.

the defendant at the El Río Motel. The call was made from a government facility, and, according to the defendant, a pre-determined script was used. The call was recorded with the consent of Cátala. At trial, the government used the call only for the limited purpose of corroborating the fact that the defendant was at the motel.

The next day, the government agents took Cátala to the vicinity of the motel. According to the government, she was first searched, and then outfitted with a recording device, although the defendant claims that she was never searched. Cátala then went to defendant's motel room.

While there, Cátala talked about counterfeit currency and controlled substances. Fifteen minutes after entering the room, Cátala exited, and surrendered to the agents a small amount of cocaine. Defendant argues that he never gave her the drug, while the government contends the opposite. According to the government, the substance was field tested and determined to be cocaine, but the defendant contends that no such field test was ever performed. On the basis of this evidence, the government concluded that it had probable cause to arrest the defendant. A warrant, however, was never obtained.

The government claims that when its agents arrived at the motel, the defendant's room door was open, and one of its agents observed Cruz standing in the doorway. The agent identified Cruz, and placed him under arrest. The defendant then stepped inside the room, where the agent frisked him and read him his *Miranda* rights. According to the government, the other occupant of the room, Alejandrina Vázquez, was then asked to leave, and a security sweep of the area was conducted. Thereafter, the defendant executed a waiver of his *Miranda* rights, and signed a form consenting to a search of the room. The government contends that the significance of the form was explained. Cocaine was found in the mattress.

The defendant asserts that immediately after the agents entered his room, they pushed him to the floor, handcuffed him, and searched his room and adjoining bathroom. Thereafter, he claims, he was taken outside to a closed garage and subjected to a body cavity search. The defendant also claims that, after the body cavity search, he was forced to sign a document without "admitting to read them." According to the defendant, nothing was found in the room, at least not until after he was taken away.

The government next contends that it took the defendant to its office in San Juan, arriving there at 4:00 p.m. on November 13, 1987, a Friday. It argues that the defendant was again advised of his *Miranda* rights, and that, without any threats or promises having been made, he signed a confession. According to the government, the defendant appeared relaxed and cooperative. Agent Burgos testified that it was after 6:00 p.m. when the defendant provided the statement, and, therefore, pursuant to a United States District Court for the District of Puerto Rico Rule, the government sought a commitment order from the United States Magistrate and took him to jail. The magistrate examined only the statement provided by appellant.

Defendant contends that, although he arrived in San Juan at 3:30 p.m., he was held, without being brought before a judicial officer, for eight hours of interrogation. He asserts that he never made a voluntary confession, but that, instead, the agents coerced him into signing a statement. Defendant contends that the agents told him that his co-defendant denounced him, and that if he did not talk, he would bear the responsibility for the crimes alone. Three hours after his arrival in San Juan, he was told that cocaine had been found in his room, and that he *and* his female companion, later identified as his cousin, would face many years in prison. The defendant thus concludes that he signed papers which contained a fictional story to protect his cousin. He asserts that he never read what he signed, and that he was taken to jail about midnight.

The appellant essentially raises four issues, all of which we will consider *seriatim.*

## II. PROBABLE CAUSE FOR ARREST

■ Cruz first argues that his arrest was without probable cause, and was, therefore, illegal. There is no better starting point from which to evaluate this argument than the constitutional amendment from which it springs.

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, . . . .

U.S. Const. amend. IV. So begins the fourth amendment of the United States Constitution. It is, by this time, well settled that the language of the fourth amendment extends its aegis to the seizure of persons as well as places, *e.g., Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and that the warrantless arrest of persons constitutes one category of seizures which must be "reasonable" under the dictates of the amendment. *Id.* All arrests, and indeed, seizures which lack some characteristics of formal arrests, are presumptively unreasonable unless supported by probable cause. *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Consequently, in evaluating whether appellant's concededly warrantless arrest was valid, the threshold inquiry must be whether there existed probable cause for such an arrest.

Appellant contends that there was no probable cause to arrest him, because the government's evidence consisted only of information supplied by Cátala. According to appellant, Cátala's information did not have sufficient indicia of reliability under *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), to permit the government to derive probable cause from it. Appellant further argues that the telephone calls and taped conversation were insufficient to provide corroboration of the informer's evidence. We find this argument peccant.

We note at the outset that appellant's reliance on *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, is misplaced. As outlined in that case and its progeny, *e.g., Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), an affidavit provides sufficient basis for a finding of probable cause if it contains facts from which a magistrate can find that conclusions of the affiant and informer are warranted, as well as additional facts sufficient to permit a magistrate to conclude both that the informer's information is reliable and that the informer is credible. This two-pronged test, however, was replaced by a "totality of circumstances" test in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *See also Massachusetts v. Upton*, 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984). Under that test, a deficiency in one *Aguilar* prong may be compensated for by a strong showing in the other if, in the magistrate's judgment, the circumstances so permit. Deference is given to the decision of the magistrate if there is a "substantial basis" for the finding. *Massachusetts v. Upton*, 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721.

■ Even if the appellant had selected the correct test, however, these cases relate only to the sufficiency of affidavits supporting arrest warrants. In this case, there was no such warrant.

Probable cause to make an arrest exists where the facts and circumstances of which the arresting officer has knowledge would be sufficient to permit a reasonably prudent person, or one of reasonable caution, to conclude that an offense has been, will be, or is being, committed. *See Michigan v. De Fillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979); *United States v. McQueeney*, 674 F.2d 109 (1st Cir.1982); *United States v. Klein*, 522 F.2d 296, 299–300 (1st Cir.1975); *United States v. Mark Polus*, 516 F.2d 1290 (1st Cir.), *cert. denied*, 423 U.S. 895, 96 S.Ct. 195, 46 L.Ed.2d 127 (1975). Furthermore, the quantum of evidence necessary to support probable cause must satisfy only this objective standard, *United States v. McCambridge*, 551 F.2d 865, 870 (1st Cir.1977), and is not required to rise to the level of that needed to sustain a conviction. *United States v. Leal*, 831 F.2d 7, 11 (1st Cir.1987).

*See also United States v. Miller*, 589 F.2d 1117 (1st Cir.), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1978).

In this case, the probabilities weigh in the government's favor. Prior to the arrest, government agents had evidence from the informer, Cátala, that Cruz was the source of a counterfeit $100 bill, and that he had rented a room at the El Río Motel. A recorded telephone call served to corroborate the fact that he was at the El Río. Moreover, after searching Cátala and sending her into Cruz' motel room equipped with a body recorder, she emerged with a quantity of cocaine. Hence, it is reasonable to conclude, and the recording confirmed, that she had obtained the cocaine from Cruz. These events were "sufficient in themselves to warrant a man of reasonable caution in the belief that the suspect had committed or was committing an offense." *United States v. Leal*, 831 F.2d at 11 (quoting *United States v. Baldacchino*, 762 F.2d 170, 175 (1st Cir.1985)). The district court correctly concluded that the totality of the circumstances supported a finding of probable cause to arrest Cruz. *Cf. Illinois v. Gates*, 462 U.S. at 231–32, 103 S.Ct. at 2328–29.

## III. WARRANTLESS ARREST

Having concluded that Cruz' arrest was supported by probable cause, our inquiry shifts to the validity of the arrest itself. Appellant contends that he had a legitimate expectation of privacy in his room at the El Río Motel, and thus that his arrest was unconstitutional because it was conducted without benefit of a valid arrest warrant. We disagree.

Even the fourth amendment has a limit to its elasticity. As interpreted, the amendment's prohibition against unreasonable searches and seizures extends only to protect those places and interests in which the accused can be characterized as having a legitimate expectation of privacy. *Rakas v. Illinois*, 439 U.S. 128, 140–50, 99 S.Ct. 421, 428–34, 58 L.Ed.2d 387 (1978). Demonstration of such an expectation is a threshold standing requirement, and analysis cannot proceed further without its establishment.[1] *E.g., United States v. Salvucci*, 448 U.S. 83, 90–91, 100 S.Ct. 2547, 2552, 65 L.Ed.2d 619 (1980); *United States v. Aguirre*, 839 F.2d 854, 856 (1st Cir.1988). The burden of persuasion is unquestionably upon the defendant. *E.g., Rakas v. Illinois*, 439 U.S. at 130 n. 1, 99 S.Ct. at 424 n. 1; *United States v. Gómez*, 770 F.2d 251, 253 (1st Cir.1985); *United States v. Goshorn*, 628 F.2d 697, 701 (1st Cir.1980).

We have often catalogued the sort of factors which are pertinent to this threshold inquiry: ownership, possession, and/or control; historical use of the property searched or the thing seized; ability to regulate access; the totality of the surrounding circumstances; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness or such an expectancy under the facts of a given case. *See, e.g., United States v. Gómez*, 770 F.2d 251, 254 (1st Cir.1985).

*United States v. Aguirre*, 839 F.2d at 856–57. Essentially, therefore, to successfully prove a fourth amendment violation, appellant must demonstrate not only that he exhibited a subjective expectation of privacy, but also that his expectation was "justifiable under the attendant circumstances." *United States v. Aguirre*, 839 F.2d at 857. *See also United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). After reviewing the record, we find the appellant's contentions misplaced.

It is well established that, absent consent or exigent circumstances, private homes may not be constitutionally entered to conduct a search or to effectuate an arrest without a warrant, even where probable cause exists. *E.g., Donovan v. Dew-*

---

1. "This inquiry is often referred to as a 'standing' issue, although it is not an inquiry that serves the function of traditional standing doctrine, which is to enable a federal court to determine whether there is such case or controversy that it may take jurisdiction of under Article III." *United States v. Lochan*, 674 F.2d 960, 963 n. 4 (1st Cir.1982). *See also United States v. Gómez*, 770 F.2d at 253; Wright, *Federal practice and Procedure: Criminal 2d* § 674 p. 771.

*ey*, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981); *Payton v. New York*, 445 U.S. 573, 575, 100 S.Ct. 1371, 1374, 63 L.Ed.2d 639 (1980). Ordinarily, this constitutional panoply also extends to guest rooms in commercial establishments. *See, e.g., Hoffa v. United States*, 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966); *Stoner v. California*, 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856 (1964); *United States v. Santiago*, 828 F.2d 866 (1st Cir. 1987), *cert. denied*, 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988). The rationale supporting this extension does not, however, apply in the instant case.

In *Hoffa v. United States*, the Supreme Court clearly elucidated the purpose of the fourth amendment:

> What the Fourth Amendment protects is the security a man relies upon when he places himself or his property within a constitutionally protected area, be it his home or his office, his hotel room or his automobile.

*Hoffa v. United States*, 385 U.S. at 301, 87 S.Ct. at 413. Although *Hoffa* dealt only with the law of searches under the fourth amendment, this rational is equally applicable to the law of arrest. But given the circumstances of the present case, we must hold that there is no interest protectible by the fourth amendment at stake.

A sixteenth century proverb states, "[n]ever judge from appearances." *Dictionary of Quotations & Proverbs* 401 (D. Browning ed. 1988). Indeed, things are not always as they appear to be. In Puerto Rico, there exists a unique form of motel. These motels, of which the El Río is an example, consist of a group of individual rooms, each connected to a garage. Persons wishing to rent such a room, commonly pay a fee at a front gate, other forms of registration not being required, then drive into an open garage and close the garage door. At other, similar motels, an attendant collects the room fee after the garage door is closed. An open garage door signifies that the room is vacant, whereas a closed one indicates that it is occupied. Entrance to the room itself is through a door within the garage.

Because the El Río Motel is a motel of this type, and because the garage door was open, and the garage was unoccupied by any vehicle, we hold that the defendant had no objectively reasonable expectation of privacy. *Cf. United States v. Aguirre*, 839 F.2d at 857. The fact that his room door was open, and that he was visible to agents standing outside the garage, only makes the case more clear. *See Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967) ("What a person knowingly exposes to the public is not ... subject to Fourth Amendment protection.")

Because we find that defendant's arrest was supported by probable cause, and that a warrant was unnecessary because defendant had no legitimate expectation of privacy which the fourth amendment will operate to protect, defendant's constitutional rights were not violated by his arrest.

## IV. VOLUNTARINESS OF CONSENT

Defendant next contends that his consent to search the motel room was unlawfully obtained, and thus should have been excluded from evidence. While it is correct to argue that searches conducted without a warrant are presumptively unreasonable, *e.g., Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), *ovrld. on other grounds, Washington v. Chrisman*, 455 U.S. 1, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982), the dialogue does not end at that point. Such searches are not unreasonable if the government demonstrates that the search comes within one of the recognized exceptions to the warrant requirement. *United States v. Jeffers*, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951), *ovrld. on other grounds, Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). In this case, we are satisfied that the burden of proof was competently carried by the government. The search at issue falls squarely within two exceptions: it was both incident to a valid arrest, and conducted pursuant to valid consent.

While it can scarcely be contested that evidence obtained as the result of an unlawful arrest or seizure must be exclud-

ed, *e.g.*, *Silverthorn v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), *ovrld. on other grounds, United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980), it is equally well settled that a search incident to a valid arrest may be made without procurance of a warrant. *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). *See also Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). In this case, the search began contemporaneously with the arrest, and never went beyond an area in the immediate control of the defendant, that is, the room in which the search occurred. *Stoner v. California*, 376 U.S. 483, 486, 84 S.Ct. 889, 891, 11 L.Ed.2d 856 (1964); *United States v. Moore*, 790 F.2d 13 (1st Cir.1986) (warrantless search of apartment valid because pursuant to valid arrest). *But see Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969) ("There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself"), *ovrld. on other grounds, United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

Even if we had not found, however, that the search was valid pursuant to a valid arrest, there is sufficient evidence in the record to support the district court's conclusion that defendant voluntarily consented to the search. A consent validly given, will, of course overcome the fourth amendment's presumptive prohibition against warrantless searches. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). As this Court has opined on numerous occasions, the findings of a district court made during a suppression hearing are binding on appeal unless clearly erroneous. *E.g., United States v. Moore*, 790 F.2d 13, 15 (1st Cir. 1986); *United States v. Baldacchino*, 762 F.2d 170, 175 (1st Cir.1985); *United States v. Cepulonis*, 530 F.2d 238, 244 (1st Cir.), *cert. denied*, 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 834 (1976).

Although defendant contends that he never read the search consent document, and only signed it because he was forced to do so, the government presented at least two witnesses who testified that defendant looked at the document as if he was reading it, and, in any event, the document was read to him. Moreover, the witnesses contended that he was not forced to sign anything, and the fact that he had been arrested five times previously tends only to support the conclusion that he was not intimidated or coerced. The same conclusion can be drawn from the statements of the government's witness who testified that he had been given his *Miranda* warnings prior to having signed the document. *See United States v. Mendenhall*, 446 U.S. 544, 558, 100 S.Ct. 1870, 1879, 64 L.Ed.2d 497 (1980). Given these circumstances, the district court was not clearly wrong in finding that the evidence did not support defendant's contention. Where there are two competing interpretations of the evidence, the district court's choice of one of them cannot be clearly erroneous. *O'Brien v. Papa Gino's of America, Inc.*, 780 F.2d 1067, 1076 (1st Cir.1986).

Because we find that the search of defendant's motel room was a search incident to a valid arrest, defendant's consent was unnecessary, although we affirm the district court's conclusion that defendant validly consented to the search. For these reasons, the evidence obtained during the search of the motel was properly admitted into evidence.

## V. VOLUNTARINESS OF CONFESSION

Defendant next contends that his confession should have been excluded from evidence, because it was made only as a result of coercion on the part of the government. We find this argument spurious.

While it is undoubtedly true that defendant's fifth amendment privilege against self-incrimination became applicable when he was taken into custody at the El Río Motel, *e.g., Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966),

the government agents took proper precautions to ensure that defendant understood his rights by advising him of those rights according to *Miranda.* Consequently, we find that defendant executed a valid written waiver of those rights. Again, the fact that he had been arrested five times previously supports the conclusion of the district court that defendant was not an "uninitiated novice," susceptible to coercive pressure or threats by law enforcement officers.

 Defendant's next contention is somewhat more interesting. He argues that the confession made while at the offices of the government on the afternoon of Friday, November 13, 1987, should have been suppressed because he was not taken before a United States Magistrate immediately upon his arrest. Fed.R.Crim.P. 5(a).[2] Because no magistrate was available over the weekend, he did not appear before a magistrate until Monday, November 16, 1987, although, pursuant to a District Court Rule, a commitment order was obtained. Defendant misconstrues the law.

Although defendant contends that he was interrogated for eight hours prior to making his confession, the government presented testimony to the contrary. The evidence presented by the government states that defendant's arrest occurred at approximately 3:30 p.m. on November 13, 1987, and a written statement was signed by him at approximately 6:30 p.m. The district court's acceptance of the government's version of the facts is supported by the record, and consequently must be accepted by this Court, because it is not clearly erroneous. *O'Brien v. Papa Gino's of America, Inc.,* 780 F.2d at 1076.

Fed.R.Crim.P. 5(a)'s prohibition against unreasonable delay must be read in conjunction with 18 U.S.C. § 3501(c). That section provides:

In any criminal prosecution by the United States ... a confession made or given by a person who is a defendant therein, while such person was under arrest ... shall not be inadmissible solely because

of delay in bringing such person before a magistrate ... if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention.

This Court has held that confessions voluntarily obtained within the six hour statutory limit are admissible, despite the fact that defendants were not taken before a magistrate until much later. *United States v. Elkins,* 774 F.2d 530, 534 (1st Cir.1985). *See also United States v. Watson,* 591 F.2d 1058 (5th Cir.), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2414, 60 L.Ed.2d 1070 (1979); *United States v. Poole,* 495 F.2d 115, 124 (D.C.Cir.1974) (Leventhal, J., concurring), *cert. denied,* 422 U.S. 1048, 95 S.Ct. 2667, 45 L.Ed.2d 701 (1975); *United States v. Halbert,* 436 F.2d 1226, 1231 (9th Cir.1970).

Because we hold that defendant's confession was voluntarily obtained, and because it was made within six hours of defendant's arrest, the fact that he was held for almost three days before being taken before a magistrate, does not render the confession inadmissable.

## VI. UNDERCOVER RECORDINGS

 Defendant's final contention is that the district court's admission into evidence of two audio recordings constituted reversible error. We find otherwise.

As the district court found, the two recordings in question were made with the consent of Denise Cátala, albeit at the request of the government. The first recording was of a telephone call made by Cátala to defendant at his room in the El Rio Motel on November 12, 1987. The second was made by Cátala on November 13, 1987 when she visited defendant in his room. According to defendant, these recordings

---

**2.** Fed.R.Crim.P. 5(a) provides, in pertinent part: [A]ny person making an arrest without a warrant shall take the arrested person without

unnecessary delay before the nearest available federal magistrate....

were made in violation of 18 U.S.C. § 2510 *et seq.*

Defendant ignores an exception to 18 U.S.C. § 2510 *et seq.* which provides that, "[i]t shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(c). *See United States v. Quiñones,* 758 F.2d 40, 43 (1st Cir.1985). In this case, Cátala clearly gave her consent to such recordings.

Furthermore, it cannot be said, as defendant argues, that Cátala was acting as an agent for the government at the time that the recordings were made, thus making the recordings inadmissible as evidence. As the Supreme Court stated in *Hoffa v. United States,* 385 U.S. 293, 302, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966), "[n]either this Court nor any member of it has ever expressed the view that the Fourth Amendment protects a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." As in *Hoffa,* we find that defendant's statements to Cátala were wholly voluntary, and not the product of any government coercion or duress. The mere fact that the government provided the recording equipment does not alter this conclusion.

## VII. CONCLUSION

Having carefully reviewed each of defendant's assignments of error, we affirm the decision of the district court.

*Affirmed.*