McGuinness v. Federal Express          CV-95-124-B    03/04/97
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW HAMPSHIRE

**Kevin McGuinness**

    **v.**                                          95-CV-00124-B

**Federal Express**


**O R D E R**


    Kevin McGuinness sued Federal Express for wrongful

discharge, negligent supervision, and breach of contract.

Federal Express moved for summary judgment.  For reasons

discussed below, I grant Federal Express's motion in part.


## I.  STANDARD OF REVIEW

    Summary judgment is appropriate if the record taken in the

light most favorable to the nonmoving party shows that no genuine

issue of material fact exists and the moving party is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(c); Commercial

Union Ins. Co. v. Walbrook Ins. Co., 7 F.3d 1047, 1049 (1st Cir.

1993).  If the nonmoving party bears the burden of proof, the

moving party initially need allege only the lack of evidence to

support the nonmoving party's case.  Celotex Corp. v. Catrett,

1

477 U.S. 317, 325 (1986).  The nonmoving party cannot rely on the pleadings alone to oppose summary judgment, but must come forward with properly supported facts to demonstrate that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## II.  BACKGROUND

The following facts are undisputed.  McGuinness began working as a part-time courier on October 5, 1985.  Throughout his employment, McGuinness had shoulder-length or longer hair which he tucked under company-issued hats to comply with Federal Express's requirements for personal appearance.[1]  Prior to October, 1993, McGuinness was never reprimanded due to the length of his hair, or warned in any way that the length of his hair was a problem.

Sometime in 1993, McGuinness complained to Robert Appis, Managing Director of the Northeast District, that Cynthia Warner, the Senior Manager of the Laconia Station where McGuinness worked, was requiring him to work more than thirty hours per

_____

[1]  The extent to which McGuinness's hair was visible as a bulge in his hat is disputed, but I need not decide that fact.

week.  The employee handbook, called the "PEOPLE manual," states that management should schedule part-time employees to work 20 hours per week if possible, but otherwise no less than 17.5 hours per week and no more than thirty hours per week.  In a memo dated October 6, 1993, responding to McGuinness's complaint, Appis instructed McGuinness to pursue his complaint through Federal Express's Open Door Process.

On October 13, 1993, one week later, Warner told McGuinness that he had to cut his hair because it did not comply with Federal Express's Personal Appearance Policy.  The policy states, in pertinent part:

> All employees must maintain a businesslike appearance . . . .  Employees are expected to dress in a businesslike manner and are to avoid extremes in personal appearance at all times. . . .  All employees are required to keep their hair clean and well-groomed in a reasonable style. Mustaches and sideburns must be kept neat and trimmed to a moderate length. . . .  All male employees who have positions requiring customer contact as a regular part of their job junctions are prohibited from wearing beards, ponytails, braids, or earrings of any kind.

Warner told McGuinness to cut his hair to shirt-collar length.

McGuinness had a three-week vacation from October 14, 1993 to November 7, 1993.  When he returned to work on November 8, Warner ordered McGuinness to go to her office and take off his hat so that she could check the length of his hair.  McGuinness went to Warner's office, but refused to remove his hat.  Warner

3

suspended McGuinness that day, and Susan Tacovsky, McGuiness's immediate supervisor, terminated him the following day.

### III.  DISCUSSION

### A.  Wrongful Discharge

McGuinness does not dispute that he was an at-will employee. Therefore, to succeed on a claim of wrongful discharge, he must prove that (1) Federal Express discharged him "out of bad faith, malice, or retaliation," and (2) Federal Express discharged him for performing "acts which public policy would encourage or because he refused to perform acts which public policy would condemn." Wenners v. Great State Beverages, 140 N.H. 100, 103 (1995), cert. denied, 116 S. Ct. 926 (1996) (quoting Short v. School Admin. Unit No. 16, 136 N.H. 76, 84 (1992)); Cloutier v. Great Atl. & Pac. Tea Co., 121 N.H. 915, 921-22 (1981). McGuinness bears the burden of articulating the public policy or policies Federal Express offended.  "Although ordinarily the issue of whether a public policy exists is a question for the jury, at times the presence or absence of such a public policy is so clear that a court may rule on its existence as a matter of law." Short, 136 N.H. at 84.

McGuinness asserts that his discharge offended public policy in three ways.  First, he claims that his privacy would have

4

been invaded if he had carried out Warner's order to remove his hat so that she could check the length of his hair. McGuinness relies on <u>O'Brien v. Papa Gino's of America, Inc.</u>, 780 F.2d 1067, 1071 (1st Cir. 1986). In <u>O'Brien</u>, plaintiff claimed that Papa Gino's forced him to take a polygraph test to determine whether he had ingested illegal drugs. <u>Id.</u> at 1073. The First Circuit <u>affirmed</u> the jury's special verdict that Papa Gino's had not offended public policy, and consequently affirmed the trial court's decision that O'Brien was <u>not</u> wrongfully discharged. <u>Id.</u> at 1072. Thus, <u>O'Brien</u> undermines McGuinness's contention that removal of his hat, which is far less intrusive than a polygraph test concerning the ingestion of illegal drugs, would have been an invasion of privacy against public policy. McGuinness also relies on the fact that New Hampshire recognizes a tort for invasion of privacy to show that removal of his hat would have been against public policy. In <u>Hamberger v. Eastman</u>, 106 N.H. 107, 111 (1964), however, the New Hampshire Supreme Court explained that an intrusion is actionable "'only where [it] has gone beyond the limits of decency.'" (quoting Restatement of Torts § 867 cmt. d). Warner was well within the limits of decency when she asked McGuinness to remove his hat. Asking

5

McGuinness to remove his hat was clearly not so serious an invasion of McGuinness's privacy that public policy would condemn it.

Second, McGuinness claims that his refusal to remove his hat or to cut his hair was condoned by public policy because it was unlawful for Federal Express to require him to cut his hair. McGuinness provides no support for the proposition that an employer may not legally require its employees to comply with reasonable standards of personal grooming. Therefore, he has failed to show that Federal Express acted illegally and that his resistance was condoned by public policy. Cf. Planchet v. New Hampshire Hosp., 115 N.H. 361, 362-63 (1975) (discharging male security guard for refusing to cut his hair not unlawful sex discrimination).

Third, McGuinness claims that he was fired not for insubordination or refusing to cut his hair, but rather because he complained about being required to work more than the 30-hour per week maximum established for part-time workers. To support his claim, McGuinness notes that he had shoulder-length or longer hair during the entire eight-year period he was employed at Federal Express and no one asked him to cut his hair until a week

after he complained about having to work too many hours. Although this claim is weak, it is minimally sufficient to survive a motion for summary judgment. Accordingly, I will permit McGuinness to proceed with his claim that he was wrongfully discharged in retaliation for complaining about having to work more than the 30-hour per week maximum established for part-time employees by the employee handbook.[2]

B. **Negligent Supervision**

McGuinness's negligent supervision claim is a poorly conceived attempt to redefine a wrongful termination claim as a negligence tort that has not and would not be recognized as a separate cause of action by the New Hampshire Supreme Court. Accordingly, I grant Federal Express's motion with respect to this count.

C. **Breach of Contract**

Count III also essentially restates McGuinness's wrongful discharge claim. As I previously noted, McGuinness does not dispute that he was an at-will employee, and has submitted no evidence to the contrary. Furthermore, Federal Express produced

---

[2] I reserve the right to reassess the sufficiency of McGuinness's evidence if Federal Express moves for judgment as a matter of law at the conclusion of the plaintiff's case in chief.

7

McGuinness's "Record of Receipt" of the employee handbook, signed

by McGuinness, which states:

> Employee: Please read the following statement, sign below, and return this document to your manager.
>
> I, Kevin McGuinness, have received the Federal Express Handbook on 9-9, 1989.**I understand that it is not acontract and that the information provided may need to be changed by the Company from time to time.**

(emphasis added).

An at-will employee has no contractual right to any duration of employment, therefore an employer does not breach any contract by discharging an at-will employee. <u>Butler v. Walker Power, Inc.</u>, 137 N.H. 432, 436-37 (1993). An at-will employee may, however, maintain a breach of contract action for damages flowing from the employer's failure to comply with other agreed terms of employment. <u>Id.</u> at 436. McGuinness does not claim damages for anything but his discharge. Therefore, his breach of contract claim must also fail.

## IV. <u>CONCLUSION</u>

For the foregoing reasons defendant's motion for summary judgment (document no. 12) is granted in part.

8

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

March 4, 1997


cc:   Matthew J. Lahey, Esq.
      Claudia Damon, Esq.
      Colby Morgan, Jr., Esq.